LAW OFFICES OF DONALD W. HUDSPETH, P.C. &
THE LAW OFFICE OF JEFFREY R. HERMAN, PLC
Donald W. Hudspeth (No. 012198)
Jeffrey R. Herman (CA No. 291062)
Kevin J. Higgins (No. 038579)
3200 North Central Avenue, Suite 2500
Phoenix, AZ 85012
Telephone: (602) 265-7997
Facsimile: (602) 265-6099
dwh@azbuslaw.com
thefirm@azbuslaw.com
jeffrey@jhermanlaw.com
kevin@jhermanlaw.com
*Attorneys for Plaintiff Rawlins*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pace Rawlins and Rawlins Law Firm P.C., an Arizona professional corporation, <br><br> Plaintiff, <br><br> v. <br><br> Jackson White PC, an Arizona professional corporation <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **FEDERAL AND STATE OF ARIZONA TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS** |

## I. INTRODUCTION

1.     Plaintiffs Pace Rawlins and the Rawlins Law Firm P.C. ("Rawlins") hereby bring their federal question action against the Defendant, Jackson White P.C. ("Jackson White"). The federal question and state law claims are interrelated because they involve the same parties, i.e. Rawlins, and Jackson White, the same sequences of events, and all arise out of Rawlins former employment with the Defendant.

2.     The federal question of this Complaint arises from the defendant's flagrant and willful infringement of the Plaintiff's trademark rights, both federally and under common law, in connection with the "Abogados A Tu/Su Alcance" mark (the "Mark"). Despite repeated cease and desist requests, the Defendant continues unauthorized use of the mark,

demonstrating a blatant disregard for the Plaintiff's established rights. The Defendant's actions have not only caused consumer confusion, who may mistake one law firm with another but have also unjustly enriched the Defendant at the Plaintiff's expense.

3. Plaintiff includes in this complaint *prima facie* evidence of federal trademark infringement under the Lanham Act, common law trademark infringement in Arizona, and false designation of origin and unfair competition under 15 U.S.C. § 1125(a) As such, the plaintiff immediately seeks injunctive relief to mitigate further damage to its trademark rights, disgorgement of the defendant's profits related to the unauthorized usage, treble damages, and attorneys' fees, emphasizing the egregious nature of the defendant's conduct under the Lanham Act's provisions for exceptional cases. This legal action aims to rectify the harm caused and prevent further unauthorized exploitation of the plaintiff's intellectual property.

## II. PARTIES

5. Plaintiff, Pace Rawlins, a licensed attorney, is a resident of Arizona and is the owner of Rawlins Law Firm P.C., a professional corporation in Arizona, with a principal place of business of 2330 N 75th Ave, Suite 211A, Phoenix, AZ 85035.

6. Defendant, Jackson White PC is an Arizona professional corporation, with a principal place of business of 40 N Center St #200, Mesa, AZ 85201.

7. Plaintiff was an employee of Defendant from August 2018 to August 2023 and provided immigration legal services for Defendant.

## III. JURISDICTION AND VENUE

8. The Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. £1121 and 38 U.S.C. ££ 1331 and 1338, in that this case arises under the Trademark Laws of the United States, 13 U.S.C. ££ 1051 et seq. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. £1367.

9. The Court has personal jurisdiction over Defendant because Defendant is an Arizona corporation with its principal place of business in Phoenix, Arizona and conducts business, as well as advertises its services, in the State of Arizona and within this judicial district.

10. Venue is proper in the District of Arizona under 28 U.S.C. £1391(b), as (a) Defendant resides in, does business in, and may be found in this judicial district; (b) a substantial part

of the events giving rise to this action occurred in this judicial district, or, in the alternative, (c) there is no district in which the action may otherwise be brought as provided in £1391, and the Court has personal jurisdiction over the Defendant.

## IV. PLAINTIFF'S STATEMENT OF FACTS FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

11. Plaintiff has practiced immigration law since 2012.

12. Plaintiff owns the standard character federal trademark, **Abogados A Tu Alcance®** (Reg. No. 7,700,955), which registered at the United States Patent and Trademark Office ("USPTO") on February 25, 2025, in class 045 in the field of "legal services in the field of immigration" (Exhibit 1).

13. At least as early as May 2014, Plaintiff coined and began to use and market the slogan "Abogados a tu/su Alcance" (the "Mark") in connection with federal immigration legal services. (Exhibit 2, ¶1-2)

14. At the time that Plaintiff created the Mark, he was working for Whittenburg Law Firm in Texas.

15. Since coining the Mark, Plaintiff has personally invested substantial money, time, and resources in promoting and developing the Mark in connection with legal services.

16. Plaintiff published a video on YouTube on July 24, 2014, in which Plaintiff's voice and likeness are depicted in close proximity to the slogan "Abogados a tu Alcance". (Exhibit 4)

17. Between 2014-2016, Plaintiff paid to have the Mark promoted in weekly segments on Telemundo Television with anchor Paola Albarran and on the radio with radio personality Edgar Contreras. (Exhibit 2, ¶3-5)

18. Plaintiff separated from Whittenburg Law in July 2016 and started operating a solo practice in his name.

19. After separating from Whittenburg Law, Plaintiff published the Mark on Plaintiff's personal Facebook page in close proximity to an image showing a user's fingertips clicking on a link on a mobile device, portraying Plaintiff as an immigration attorney "at your fingertips" or "within reach" (Exhibit 4).

20. On September 7, 2016, Plaintiff purchased the website domain www.azabogadosasualcance.com which he used to direct traffic to a website promoting Plaintiff's solo practice. Receipt of purchase provided in Exhibit 5.

21. Further, between 2016-2018, Plaintiff prominently displayed the Mark to current and prospective clients via an expansive email campaign, such that the Mark appeared at the top of a series of email communications sent out to clients, thereby reinforcing his brand identity, an example of which is shown in Exhibit 6.

22. Starting in 2017, Plaintiff paid to have the Mark promoted on El Ritmo TV in Arizona. Plaintiff identifies Ruben Herrera as a third-party with firsthand knowledge of said use. (Exhibit 2, ¶6)

23. Thus, Plaintiff has established common law trademark rights in Arizona based on his continuous, *bona fide* use of a distinctive mark in commerce prior to 2018.

24. Sometime in early 2018, Defendant engaged in communications with Plaintiff with the intent of hiring Plaintiff as an immigration attorney at Jackson White Law.

25. An employment agreement was executed between Plaintiff and Defendant on July 26, 2018 (the "Hiring Agreement"), provided as Exhibit 7.

26. The Hiring Agreement was drafted by Defendant and is the only signed contract between the parties.

27. At the time Plaintiff and Defendant entered the Hiring Agreement, Defendant was not using the Mark in any capacity.

28. Based on information and belief, Defendant was fully aware of Plaintiff's active use of the Mark at the time the Hiring Agreement was entered.

29. Of significance, the Hiring Agreement does not include an assignment of Plaintiff's trademark rights, or any other intellectual property rights for that matter, to Defendant.

30. Moreover, Plaintiff has never been paid by Defendant in exchange for a transfer of rights in the Mark to Defendant.

31. Plaintiff contends Defendant verbally promised him a partnership upon meeting specific agreed-upon milestones.

32. However, after meeting the originally agreed-upon milestones, Plaintiff was never offered, nor did he ever receive, a partnership interest in Defendant's firm.

33. Based on Defendant's promise of partnership and wanting to be a 'team player', Plaintiff consented to Defendant's use of his Mark in advertising and marketing, subject to the implied understanding that Plaintiff was the original creator and owner of the Mark and that Defendant acted with Plaintiff's permission to use the Mark in advertising during his employment at Jackson White and while the parties enjoyed a mutual benefit from its use.

34. During his employment with Defendant, Plaintiff continued to exercise control over the Mark. For example, a text exchange occurred between Plaintiff and Adam Ashby, partner at Jackson White, on 2/21/2020, in which Mr. Ashby asks Plaintiff "we want to go forward with abogadoSatualcance right? Plural? You have abogoasualcance (singular)…" (Exhibit 8A)

35. In another example, a text exchange occurred on 7/29/2020 between Plaintiff and Natalia (employee of Defendant asked Plaintiff questions regarding use and display of the Mark, and Plaintiff provided his), in which Plaintiff is asked his opinion on use of the Mark in a logo design, and he provides his approval by stating "Looks good to me". (Exhibit 8B)

36. Further, on 9/08/2020, Plaintiff paid out of his own pocket to renew the domain name www.azabogadoasualcance.com. (Exhibit 8C)

37. Sometime in early-to-mid-2023, Plaintiff became suspicious that potential clients of immigration legal services that were directed at contacting Defendant's main phone number, and other phone numbers listed for marketing immigration services as listed in marketing advertisements using the Mark were being referred to another law firm, instead of going to Plaintiff.

38. Plaintiff is in possession of a recording of a phone call between him and one of his immigration clients (Aridai Buelna, Case No. 36597-0001) from August 18, 2023, in which Ms. Buelna informed Plaintiff that she called a pre-existing phone number she had saved to her phone as Plaintiff's contact phone number which she had previously used without issue, and upon dialing it, was directed to Mendoza Law Firm.

39. Further, in early-to-mid 2023, Plaintiff noticed a marked decline in immigration call volume and leads. Plaintiff was previously averaging "15-20 consultations (leads) per day" (Exhibit 9), but phone call logs will show that this number dropped unexpectedly and significantly.

5

40. On information and belief, Defendant has a reputation for forming referral relationships and referring legal work with outside law firms in exchange for a referral/participation fee.

41. On information and belief, Defendant formed a referral relationship with Mendoza Law while Plaintiff was employed by Defendant, and Defendant in fact referred new immigration client leads to Mendoza Law in exchange for a referral/participation fee.

42. Defendant did not inform Plaintiff of any such referral relationship with Mendoza Law, and upon discovering that immigration leads were being directed elsewhere, felt that Defendant's actions were in bad faith and violative of the covenants of the Hiring Agreement along with the implied understanding that contributed to Plaintiff's consent in allowing Defendant to use his Mark in marketing for legal services.

43. Defendant formerly communicated his concerns to Defendant in an email dated August 21, 2023, whereby he clearly states in no uncertain terms:

> ***Please STOP using my name to divert immigration clients and potential immigration clients (leads) to Mendoza Immigration (Hill Law Group, P.C.), while I still have a partnership relationship in or with the Firm***. (Exhibit 10)

44. The employment relationship became irreconcilable, and Plaintiff left Defendant's firm on August 31, 2023, after five years of employment, as noted by Defendant in Exhibit 11.

45. Further, Defendant stopped paying Plaintiff as of August 31, 2023.

46. However, Defendant continued to use the Mark after August 31, 2023 to promote its legal services.

47. Recognizing that Defendant was still using his Mark after Plaintiff separated from Defendant, Plaintiff immediately retained legal counsel (Hudspeth Law) and sent Defendant a formal cease and desist letter via certified mail dated September 28, 2023 ("Demand Letter"), which states in writing that Defendant must "cease and desist its use immediately" of the Mark. (see Exhibit 12)

48. Defendant did not cooperate or comply with the Demand Letter and continued to willfully infringe on his rights, so Plaintiff sent Defendant a second cease and desist communication on May 2, 2024, reiterating that Defendant has no right to use the Mark and must "immediately cease and desist from any further use of 'Abogados A Tu Alcance' or any similar variations thereof." See Exhibit 13.

49. Defendant still has not complied with Plaintiff's repeated demands to cease and desist use of the Mark and continues to use the Mark in association with legal services.

50. For example, Defendant owns and uses the top-level domain https://losabogadosatualcance.com/ (the "Infringing TLD Website") to promote legal services, as shown in Exhibit 14.

51. The Infringing Website prominently displays the logo, the "Infringing Mark":



52. Further, Defendant promotes the Infringing Mark on Facebook, YouTube, and other websites and social media outlets (collectively, the "Infringing Sites"), as identified in Exhibit 15. Further, Defendant promotes Jackson White Law on the official websites for Arizona Hispanic Chamber of Commerce and East Valley Chamber of Commerce using Plaintiff's Mark (id). 450. Moreover, Defendant actively flaunts the Mark on a Tesla Cybertruck owned and driven by Defendant on public roadways in Arizona and in surrounding areas, as shown in Exhibit 16.

53. There is no question Defendant knows the Mark was originated by and belongs to the Plaintiff. Defendant's adoption and use of the Mark is an obvious attempt to capitalize on the Plaintiff's good will as well as to deceive the customer base into thinking the goodwill was attached to Jackson White. Based on the foregoing, Defendant's infringing use of the Mark is obviously intentional and in *bad faith*.

54. Both Plaintiff and Defendant are based in Arizona, have offices in and around the Phoenix area, and market to potential clients in need of legal services within the same geographic area.

55. Both Plaintiff and Defendant market and promote the Mark on their respective websites, social media pages, and on internet search engines, therefore, Plaintiff and Defendant advertise using similar trade channels.

56. Based on information and belief, an appreciable number of potential clients of legal services are being confused by Defendant's use of Plaintiff's Mark.

57. Based on information and belief, an appreciable number of potential clients of legal services intending to hire Plaintiff have and continue to mistakenly hire Defendant to the financial benefit of Defendant and to the detriment of Plaintiff.

58. For example, a Google search conducted on June 12, 2025 shows the Mark being used by both Plaintiff and Defendant directing traffic to their respective websites, as shown in Exhibit 17.

59. Based on information and belief, Defendant's brazen display of an advertising wrap depicting the Mark on a Tesla Cybertruck tarnishes and damages the reputation of the Mark in the minds of Plaintiff's target consumer, namely, clients in need of immigration legal services who may disagree with the political entanglement between Tesla/Elon Musk and the current government administration.

60. Plaintiff and Defendant both operate in the legal field, making it likely that expansion into further services would result in additional confusion.

61. Defendant's actions are willful and intended to trade on Plaintiff's goodwill and reputation.

62. Defendant's unauthorized use of the Mark constitutes common law trademark infringement since at least as early as October 6, 2023, which is five (5) business days from the date of the Demand Letter.

## V. CLAIMS RELATED TO TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

### COUNT ONE: FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT 15 U.S.C. § 1114(1)(A)

63. All statements contained in the above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

64. Plaintiff personally coined the phrase 'Abogados a tu Alcance' (the "Mark") in 2014 as a slogan, which he has used interchangeably with 'Abogados a su Alcance'.

65. Plaintiff has used the Mark in interstate commerce in connection with federal immigration legal services since at least as early as May 2014.

8

66. Since May 2014, Plaintiff has publicly and noticeably used the Mark on the internet, on the radio, and on television to identify itself in the field of immigration legal services.

67. Plaintiff is the owner of the U.S. Federal Trademark Registration for ABOGADOS A TU ALCANCE (Reg. No. 7,700,955), issued by the United States Patent and Trademark Office on February 25, 2025, as shown in <u>Exhibit 1</u>.

68. Defendant commercially uses a logo which prominently includes the literal element "ABOGADOS A TU ALCANCE" on multiple websites, Google Maps, social media platforms, and in public marketing in connection with legal services despite Defendant's awareness of Plaintiff's senior rights in the Mark.

69. Defendant's literary use of "Abogados a tu Alcance" is identical to Plaintiff's registered trademark.

70. The slogan, "Abogados a tu Alcance", is an inherently strong trademark.

71. Both Plaintiff and Defendant provide legal services.

72. On information and belief, clients have already mistakenly contacted Defendant based on Defendant's unauthorized use of the Mark, intending to contact Plaintiff.

73. Both Plaintiff and Defendant market legal services over the internet using dedicated websites and social media and therefore operate using similar trade channels. As the Ninth Circuit Court of Appeals state in Sleekcraft: "When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. When the goods are related, but not competitive, several other factors are added to the calculus." Sleekcraft, 599 P.2d at 354. Here, Plaintiff and Defendant law firms are both offering legal services using the same Mark, no other factors need be added to the calculus.

74. On information and belief, potential clients of legal services are prone to making quick decisions when clicking hyperlinks or calling law firms for a consultation when initially searching for legal services.

75. On information and belief, potential clients of legal services are attracted to contacting a law firm based on a feeling the Mark denotes; the comfort of having a "lawyer at your fingertips".

76. Defendant knew or should have known that Plaintiff had been using the Mark prior to Defendant hiring Plaintiff as an associate attorney. Defendant certainly knew that Plaintiff was using the Mark before the Defendant "borrowed" it. As the Ninth Circuit Court of Appeals stated in Sleekcraft: "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." [cites omitted]. *Sleekcraft* 599 P.2d at 354.

77. Further, Defendant has been made aware of Plaintiff's federal trademark registration; yet Defendant continues to use the Mark without Plaintiff's permission.

78. Defendant has therefore acted willfully to create a *likelihood of confusion* with Plaintiff's Mark.

79. The wrongful and unauthorized use by Defendant of Plaintiff's Mark is likely to cause confusion or mistake or deception as to the source of Defendant's legal services and/or sponsorship or authorization of Defendant's legal services.

80. Defendant's widespread marketing and advertising using the Mark has created a substantial digital footprint on the internet and is likely to trade on Plaintiff's good will and reputation and influence the purchasing decision of the individuals seeking legal services.

81. Defendant has continued its infringement despite the actual notice provided by the communications it received from Plaintiff on September 28, 2023, and May 2, 2024.

82. As a direct result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer damage to Plaintiff's business, goodwill, reputation, profits, and legal fees for which Plaintiff is entitled to relief.

COUNT TWO: ARIZONA COMMON LAW TRADEMARK INFRINGEMENT

83. All statements contained in the above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

84. Plaintiff coined and used the Mark in commerce in connection with immigration legal services in the State of Arizona long before Defendant.

85. Plaintiff has publicly and noticeably used the Mark on the internet, and on local radio and television stations in Arizona, to market itself in the field of immigration legal services.

86. Plaintiff and Defendant entered into an employment agreement which lasted from August 1, 2018 through August 31, 2023, during which time Plaintiff consented to Defendant's use of the Mark.

87. Plaintiff continued to exercise control over the Mark while employed by Defendant by approving requests and overseeing use of the Mark, as demonstrated in Exhibit 8.

88. Plaintiff believed that new immigration clients attracted to Defendant's firm based on Defendant's permitted use of the Mark would be personally represented by Plaintiff.

89. On information and belief, Defendant violated this covenant by referring immigration work to an outside law firm in exchange for a referral or participation fee, which was never disclosed to Plaintiff.

90. On information and belief, Mendoza Law Firm aka Hill Law Group, P.C. is the firm that received and benefited from immigration client referrals sent by Defendant while Plaintiff was working for Defendant.

91. Consequently, Plaintiff's belief that Defendant had been referring immigration work to an outside firm created distrust and was a significant factor that led to Plaintiff's separation from Defendant.

92. Shortly thereafter, Plaintiff withdrew consent for Defendant's use of the Mark after the end of the employment period, as evidenced by the demand letter sent by Plaintiff's counsel on September 28, 2023. (see Exhibit 12)

93. Plaintiff never assigned rights in the Mark to Defendant before, during, or after Plaintiff's term of employment.

94. Defendant's marketing and advertising using the Mark is likely to influence the purchasing decision of the individuals seeking legal services in Arizona.

95. Defendant has continued its infringement despite the actual notice provided by the letter it received from Plaintiff's counsels on September 28, 2023, and May 2, 2024.

96. Defendant's actions at least as early as September 28, 2023, constitute common law trademark infringement.

97. As a result of Defendant's acts as alleged herein, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, reputation, profits, and legal fees for which Plaintiff is entitled to relief.

## COUNT THREE: UNFAIR BUSINESS COMPETITION IN ARIZONA

98. All statements contained in the above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

99. Defendant has intentionally engaged in deceptive and wrongful conduct in its bold and prominent use of the Mark, despite having first-hand knowledge that Defendant did not create the Mark or acquire rights to use the Mark from Plaintiff.

100. The wrongful and unauthorized use by Defendant of the Mark is likely to cause confusion or mistake or deception as to the source of Defendant's legal services and/or sponsorship or authorization of Defendant's legal services, and fall within the purview of Arizona Revised Statutes Title 44, Chapter 10, Article 7 (Consumer Fraud) and Title 20, Chapter 3, Article 2 (Unfair Trade Practices).

101. Based on the Defendant's actions, Plaintiff has suffered a loss of clients and potential clients resulting in lost profits.

102. Based on Defendant's actions, Plaintiff has suffered irreparable harm in the form of damage to Plaintiff's reputation and weakening of the Mark due to dilution.

103. Defendant knew or should have known that its use of the Mark was likely to damage Plaintiff.

104. As a result of Defendant's acts as alleged herein, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, reputation, profits, and legal fees for which Plaintiff is entitled to relief.

## COUNT FOUR: FEDERAL UNFAIR COMPETITION

105. All statements contained in the above paragraphs of this Complaint hereby incorporated by reference as if fully set forth herein.

106. Under Section 43(a) of the Lanham Act, Defendant's conduct constitutes false designation of origin, false, or misleading description of fact or false or misleading representation used in connection with Defendant's use of the Mark for legal services which are likely to cause confusion, mistake or deception.

107. Defendant's unauthorized use in commerce of the Mark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's services, and is likely to cause consumers to believe, contrary to fact, that Defendant's services are sold, authorized,

endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

108. Further, Defendant's unauthorized use in commerce of the Mark constitutes use of a false designation of origin and misleading description and representation of fact.

109. Defendant is engaged in practices that are likely to mislead consumers or other businesses about the origin, affiliation or quality of the services.

110. Defendant's unauthorized use of the Mark will have lasting repercussions, e.g. where the Defendant does not provide quality service, becomes associated with unethical practices, or bills clients at an unconscionable rate, and Plaintiff inherits a negative association with Defendant.

111. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

112. Defendant by its conduct is intentionally disrupting Plaintiff's relationships with clients or potential clients.

113. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

114. On information and belief, Defendant intentionally traded on Plaintiff's Mark while Plaintiff was employed by Defendant in using the Mark to obtain immigration legal service client leads and referring said leads to Mendoza Law aka Hill Law Group, P.C. in exchange for a referral or participation fee without Plaintiff's knowledge or permission.

115. Defendant's conduct constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT FIVE – FALSE ADVERTISING

116. All statements contained in the above paragraphs of this Complaint hereby incorporated by reference as if fully set forth herein.

117. Defendant Jackson White has used Plaintiff Rawlins trademark slogan in its advertising, creating a false or misleading statement of fact about its service.

118. The false statement was used in commercial advertising or promotion.

119. The false statement was material, meaning it would be likely to influence a consumer's purchasing decision.

120. The false advertising occurred in interstate commerce.

121. The Plaintiff has suffered, and is likely to continue to suffer, injury as a result of the false advertising.

## VIII. PRAYER FOR RELIEF

### A. CLAIMS FOR RELIEF RELATING TO TRADEMARK INFRINGEMENT

122. Plaintiff respectfully requests that this Court issue a preliminary and permanent injunction pursuant to 15 U.S.C. § 1116(a), motion filed concurrently, enjoining Defendant and all persons acting in concert with it from using Plaintiff's Mark or any mark confusingly similar thereto in connection with the promotion, sale, offering for sale, or distribution of legal services. Plaintiff is suffering and will continue to suffer irreparable harm as a result of Defendant's willful and unauthorized use of Plaintiff's mark, for which there is no adequate remedy at law. Injunctive relief is necessary to prevent further consumer confusion, protect Plaintiff's goodwill, and preserve the distinctiveness of its mark.

123. Plaintiff requests that Defendant be ordered to pay damages to Plaintiff, including statutory damages under federal provisions, treble damages and disgorgement of Defendant's profits, as related to Defendant's past and continued unauthorized use of the Mark.

124. Based on the willfulness of the infringement and other bad faith acts of Defendant, and to serve as a deterrent to other law firms, Plaintiff requests that Defendant pay Plaintiff's Attorneys' fees and costs under the exceptional circumstances provision under the Lanham Act, and state law of Arizona.

125. Plaintiff further requests that Defendant issue a public apology to Plaintiff for its unauthorized use of Plaintiff's Mark and bad faith conduct as described herein. This will help tremendously "clear the air" and the digital footprint that Defendant has created based on its willful infringement.

126. Any other relief the Court deems just and proper relating to the trademark claims.

DATED this 8th day of September 2025.

Respectfully submitted

THE LAW OFFICES OF DONALD W. HUSDPETH, P.C.

By: /Donald W. Hudspeth/
Donald W. Hudspeth
*Attorney for Plaintiff Rawlins*
.

# CERTIFICATE OF SERVICE

I hereby certify that on 8th day of September 2025, a copy of the foregoing was filed electronically using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of records.

By: /s/ Afton M. Buse
**Afton M Buse, Paralegal**